# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**LINDELL JERMYAL STOKES, et al.**                                    **PLAINTIFFS**

**vs.**                                            **CIVIL ACTION No.: 3:23-CV-524-HTW-LGI**

**VICTORIA LUCKY, et al.**                                              **DEFENDANTS**

## ORDER

Before this Court are grave allegations implicating multiple tiers of Mississippi's correctional, municipal, and child protection systems. Plaintiffs Lindell Jermyal Stokes ("Stokes") and Wendy Perkins ("Perkins") (together, "Plaintiffs") bring this civil rights action under 42 U.S.C. §§ 1983[1] and 1985[2], asserting a broad conspiracy involving State officials, local government actors, and private medical providers.

At the core of their allegations lies a deeply troubling claim: that while incarcerated and assigned to a work-release program, Plaintiff Perkins repeatedly was sexually assaulted by Defendant Anzores Aldridge ("Aldridge"), a correctional officer employed by the Mississippi

---

[1] 42 U.S.C. § 1983 - Civil action for deprivation of rights:
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable".

[2] 42 U.S.C. § 1985 states, in pertinent part:
"(1) Preventing officer from performing duties: If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or on account of his having accepted or held any such office, trust, or place of confidence".

Department of Corrections ("MDOC"), resulting in the conception and birth of a child—J.M.S. After the birth, say Plaintiffs, State and medical actors conspired to sever the parental rights of both Plaintiffs without due process.

## I.     JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1331[3], as Plaintiffs bring claims under federal statutes, including 42 U.S.C. §§ 1983 and 1985. The Court also exercises supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367[4]. Venue is proper under 28 U.S.C. § 1391(b)[5] because the alleged events occurred in this judicial district.

## II.     BACKGROUND AND PROCEDURAL HISTORY

The Plaintiffs in this matter are Lindell Jermyal Stokes, his wife, Jennie Perkins, and J.M.S., their infant son. Plaintiffs allege that J.M.S. was born during Perkins's incarceration under the custody of MDOC in Rankin County, Mississippi[6]. The Second Amended Complaint states that Stokes is listed on the official birth certificate as the father [Doc. 98, ¶¶ 36, 52]. Despite this,

---

[3] 28 U.S.C. § 1331 - Federal question: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States".

[4] 28 U.S.C. § 1367 - Supplemental jurisdiction: "(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties".

[5] 28 U.S.C. § 1391(b) - Venue in general: "A civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action".

[6] According to the record, Perkins was convicted of Burglary.

Plaintiffs claim that the child was removed from their custody by Mississippi Department of Child Protection Services (MDCPS) without lawful authority [Doc. 98, ¶¶ 36–38].

Perkins asserts she was sexually assaulted by Officer Aldridge, a correctional officer employed through MDOC, while incarcerated [Doc. 98 at ¶ 49]. Multiple women allegedly had prior complaints against Aldridge, but supervisors permitted him to remain in a position of authority. *Id*.

On July 18, 2022, while still in custody, Perkins was transported to MBMC to deliver J.M.S. Following the birth, Plaintiffs allege that MDCPS officials, acting without a court order, lawful consent, or exigent circumstances, removed the newborn from the care of his mother and transferred him to an unrelated third party [Doc. 98 at ¶¶ 51-52]. Plaintiffs assert that the MDCPS officials, including Defendants Miller and Barrett, in concert with hospital staff, procured the child's release by presenting misleading paperwork and misrepresenting the legal authority for the transfer. *Id*.

Stokes, who had never been alleged to be unfit and who had legal standing as the father, allegedly was denied any opportunity to contest the removal or assume custody. Plaintiffs further contend that no proper youth court proceeding had been initiated and that the actions of MDCPS officials, medical staff, and other defendants violated clearly established constitutional rights to familial association and procedural due process.

Following the unauthorized removal, Plaintiffs allege that they made repeated efforts to regain custody of J.M.S. but were stymied by MDCPS and other actors who refused to acknowledge Stokes' parental rights or initiate appropriate legal proceedings. Plaintiffs claim that the entire process was riddled with procedural irregularities, secrecy, and coercion, and that the minor child has remained wrongfully separated from his biological parents as a result.

As a result of these actions, Plaintiffs assert claims under 42 U.S.C. § 1983 for violations of their constitutional rights, as well as state law claims for assault and medical malpractice, against the various individuals, governmental entities, and private institutions involved.

Plaintiffs initially filed their complaint on August 10, 2023. Since that time, the case has evolved significantly, with numerous parties entering appearances and asserting various defenses. In response to the original complaint, multiple defendants filed motions to dismiss under Rules 12(b)(1)[7] and 12(b)(6)[8], arguing sovereign immunity, failure to state a claim, and lack of personal involvement. Plaintiffs subsequently filed a Second Amended Complaint on August 6, 2024, substantially expanding the factual allegations and legal claims.

## II.   THE SECOND AMENDED COMPLAINT

The Second Amended Complaint spans 35 pages, introduces additional factual allegations and legal theories, and added additional defendants. Plaintiffs seek redress under 42 U.S.C. §§ 1983 and 1985 for alleged violations of the First[9], Eighth[10], and Fourteenth[11] Amendments to the

---

[7] b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: … 1) lack of subject matter jurisdiction.
Fed. R. Civ. P. 12

[8] b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: … 6) failure to state a claim upon which relief can be granted;
Fed. R. Civ. P. 12

[9] Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.
U.S. Const. Amend. I

[10] Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted
U.S. Const. amend. VIII

[11] Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall

United States Constitution. The follows lists the named Defendants and Plaintiffs' respective claims against them:

1. **Mississippi Department of Corrections (MDOC)**
   - Sovereign defendant. Plaintiffs assert institutional liability for failure to supervise, train, and protect inmates; failure to intervene in known sexual abuse; and participation in the unlawful removal of J.M.S. from his mother.

2. **Commissioner Burl Cain (individual and official capacity)**
   - Alleged to have failed in his supervisory responsibilities to prevent systemic abuse and retaliation against Perkins.

3. **Mamie Terrell, Laqunda Collins, and Latoya Anderson (MDOC staff)**
   - Alleged to have known about Aldridge's prior misconduct, failed to intervene, and facilitated or acquiesced in practices that exposed Perkins to harm.

4. **Anzores Denard Aldridge (Flowood supervisor)**
   - Accused of sexually assaulting Perkins and violating her Eighth and Fourteenth Amendment rights. Also alleged to be a repeat offender with a known history.

5. **City of Flowood, Mississippi**
   - Accused of maintaining an informal policy or custom allowing Aldridge unsupervised access to female inmates. Alleged failure to train or supervise its personnel adequately.

6. **Chris Bowers (Director, Flowood Parks and Recreation)**
   - Allegedly responsible for supervising Aldridge and allowing him to work with vulnerable inmates despite prior misconduct. Plaintiffs allege Bowers failed to conduct a background check on Aldridge, and failed properly to train Aldridge.

7. **Mississippi Department of Child Protection Services (MDCPS)**
   - Sovereign defendant. Accused of improperly removing J.M.S. without following youth court procedures, obtaining a court order, or notifying legal parents.

---

abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
U.S. Const. amend. XIV

8. **Andrea Sanders (Commissioner, MDCPS)**
    - Alleged to have participated in, or sanctioned the unlawful deprivation of parental rights.

9. **Nancy Barrett and Trudy Miller (MDCPS social workers)**
    - Allegedly processed and approved the removal of J.M.S. without due process or lawful authority.

10. **Mississippi Baptist Health Systems, Inc. (MBHS)**
    - Alleged to have conspired with MDOC and MDCPS to coerce Perkins into relinquishing custody and failed to ensure lawful release procedures were followed.

11. **Victoria Lucky**
    - Alleged to have taken custody of J.M.S. without legal authorization, court approval, or familial connection.

This Order addresses the following five motions:

- Reurged Motion to Dismiss or for Summary Judgment by the City of Flowood and Chris Bowers **[Docket no. 102]**;

- Motion to Dismiss for Failure to State a Claim by MDOC, Commissioner Burl Cain, Deputy Commissioner Mamie Terrell, and Classification Officer Laquanda Collins **[Docket no. 105]**;

- Motion to Dismiss based on Eleventh Amendment Immunity and for Failure to State a Claim by Nancy L. Barrett, Trudy R. Blaylock-Miller, Mississippi Department of Child Protective Services, and Andrea Sanders **[Docket no. 107]**;

- Motion to Dismiss by Mississippi Baptist Health Systems (MBHS) for Failure to State a Claim against it **[Docket no. 109]**;

- Plaintiffs' Motion to Substitute Mississippi Baptist Medical Center (MBMC) in place of MBHS **[Docket no. 120].**

### III. LEGAL STANDARDS

A. **Rule 12(b)(1) – Lack of Subject atter Jurisdiction**

When presented with a Rule 12(b)(1) motion, the Court must assess whether the complaint sufficiently alleges a basis for subject matter jurisdiction. See *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The burden of proof lies with the party asserting jurisdiction. The Court may evaluate undisputed facts and resolve disputes of fact to determine jurisdiction.

B. **Rule 12(b)(6) – Failure to State a Claim**

To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when the plaintiff pleads facts that allow the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The Court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff; however, the Court need not accept conclusory allegations, unwarranted factual inferences, or legal conclusions.

C. **Rule 56 – Summary Judgment**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of identifying the basis for its motion and the portions of the record that it contends demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the burden shifts to the non-moving party to produce evidence or designate specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Courts must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. The nonmovant may not rest on mere allegations or denials but must show specific facts indicating a genuine issue for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

## IV.    ANALYSIS

**A. Sovereign Immunity (MDOC and MDCPS)**

The Mississippi Department of Corrections (MDOC) and the Mississippi Department of Child Protection Services (MDCPS) are both agencies of the State of Mississippi and assert Eleventh Amendment sovereign immunity. Under well-established Supreme Court precedent, the Eleventh Amendment bars suits for damages against states and state entities unless the state has waived its immunity or Congress has abrogated it. See *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). Neither exception applies here.

The motions to dismiss filed by MDOC and MDCPS [Docs. 105 and 107, respectively] are grounded in the assertion that Plaintiffs seek monetary damages against these state agencies. Plaintiffs do not dispute that these entities are arms of the state; therefore, this Court grants the motions as to any claims seeking damages against these agencies.

Plaintiffs also seek declaratory or prospective injunctive relief against agency officials in their official capacities for ongoing constitutional violations. Such claims may proceed under the exception articulated in *Ex parte Young*, 209 U.S. 123 (1908). That doctrine permits suits for prospective relief to enjoin unconstitutional conduct, provided the plaintiff sues a state official responsible for the enforcement of the challenged policy or practice. Plaintiffs have alleged the unlawful and ongoing deprivation of custody of J.M.S., and that MDCPS continues to restrict reunification. If proven, these claims could support injunctive relief; so, the Court denies the motion to dismiss as to such equitable relief.

### B. Qualified Immunity (Cain, Terrell, Collins, Sanders, Barrett, Miller)

Defendants Cain, Terrell, Collins, Sanders (MDOC officials) and Barrett, Miller (MDCPS officials) argue that they are entitled to qualified immunity for their individual conduct. Under *Pearson v. Callahan*, 555 U.S. 223, 232 (2009), the Court applies a two-pronged inquiry: (1) whether the plaintiff alleged a violation of a constitutional right, and (2) whether the right was clearly established at the time of the violation.

1. MDOC Officials

The facts alleged against Cain, Terrell, Collins, and Sanders manifest that these senior officials had knowledge of Officer Aldridge's prior misconduct, including sexual abuse complaints from other incarcerated women. These Defendants allegedly failed to remove him from duties that placed him in proximity to vulnerable female inmates, including Perkins [See Doc. 98]

In *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 454 (5th Cir. 1994), the Fifth Circuit found that supervisory officials could be held liable where they had actual knowledge of a

subordinate's abuse of a minor and acted with deliberate indifference. Likewise, in *Brown v. Callahan*, 623 F.3d 249, 254 (5th Cir. 2010), the Court emphasized the obligation of supervisors to act when aware of constitutional violations. These cases may apply with full force to the present facts, where officials allegedly ignored credible allegations.

At this juncture, the Court cannot conclude that the MDOC Defendants are entitled to qualified immunity as a matter of law. Discovery is warranted to assess the extent of their knowledge and actions taken (or not taken) in response to prior complaints.

### 2. MDCPS Officials

Defendants Barrett and Miller are alleged to have removed J.M.S. from his biological parents without a youth court order, voluntary consent, or exigency [Doc. 98 at ¶¶ 47-53]. In *Wooley v. City of Baton Rouge*, 211 F.3d 913, 923 (5th Cir. 2000), the Fifth Circuit held that removing a child from parental custody without notice and a hearing violates procedural due process unless exigent circumstances exist.

Here, the Complaint affirmatively alleges that there was no imminent danger, no youth court filing, and no parental consent. The Supreme Court consistently has reaffirmed the right of parents to the care, custody, and control of their children. *Troxel v. Granville*, 530 U.S. 57, 65 (2000). These rights are fundamental and well-established.

Defendants' argument that they acted in good faith or pursuant to protocol might not entitle them to dismissal. If Plaintiffs' allegations are proven, under the law and facts, showing that Plaintiffs' rights were established and violated, Defendants would be exposed to liability and damages. With just these slender facts before the Court, this Court at this time, must rule that these Defendants are not shielded by qualified immunity at this pleading stage.

**C. Rule 12(b)(6): Failure to State a Claim**

**1. MBHS**

MBHS moves to dismiss [Doc. 110] arguing it was not a state actor and that its involvement was limited to routine discharge procedures; however, the Second Amended Complaint alleges that MBHS's employees knowingly cooperated with state officials to facilitate the transfer of J.M.S. without judicial approval. Private parties may be liable under § 1983 when they willfully participate in a conspiracy with state officials. *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980).

Plaintiffs also allege that MBHS failed to ensure that valid consent was obtained and disregarded hospital policy by failing to document or confirm lawful custody. If true, this behavior could amount to concerted action under color of law; thus, the Court finds that Plaintiffs adequately have pled a conspiracy claim sufficient to survive the Rule 12(b)(6) bar.

**2. The City of Flowood and Chris Bowers**

The City and Bowers argue that Plaintiffs fail to state a claim for municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), and reassert that Aldridge was not acting as their employee. The Complaint, though, alleges that Aldridge was supervising Flowood inmate work crews, and was under the supervision of the Flowood Parks and Recreational Department when the assaults occurred.

To establish municipal liability, a plaintiff must show: (1) a policy or custom, (2) that was the moving force behind a constitutional violation, and (3) deliberate indifference by municipal policymakers. See *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010).

Plaintiff's Complaint describes Aldridge as an offender with previous grievances of misconduct, who failure properly to supervise. The City's inadequate response to his conduct demonstrated a a lack of remedial action. If proven, these facts could support a finding of deliberate indifference. This Court finds that Plaintiffs sufficiently have pled a viable *Monell* claim to survive dismissal.

### D. Summary Judgment Standard (Flowood Defendants)

The City of Flowood and Bowers also seek summary judgment [Doc. 103], asserting that Aldridge was solely an MDOC employee and that Flowood bore no responsibility for any misconduct by him. The record presently is undeveloped. At the Rule 56 stage, a court must draw all inferences in favor of the non-movant. *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986). Plaintiffs' allegations that Aldridge was acting in his capacity as a Flowood Parks and Recreation employee creates factual disputes as to Aldridge's agency relationship.

In this Court's eye, these issues require factual resolution; summary judgment, therefore, is premature and is denied without prejudice at this juncture.

### E. Analysis of State Law Tort Claims

### 1. Assault Claim (Against Aldridge)

Plaintiffs assert that Aldridge assaulted Perkins while acting in his supervisory role. Under Mississippi law, assault requires an intent to cause bodily harm or an act creating reasonable apprehension of such harm. See *Morgan v. Greenwaldt*, 786 So. 2d 1037, 1043 (Miss. 2001). The Complaint alleges that Aldridge engaged in unconsented sexual contact under coercive circumstances, satisfying this standard.

While Aldridge may assert immunity under the MTCA, Mississippi courts have found that intentional torts, including assault, fall outside the MTCA's protections. See *Jones v. City of Jackson*, 203 So. 3d 1156, 1160 (Miss. 2016). This claim may proceed against Aldridge in his individual capacity.

**2. Medical Malpractice Claim (Against MBHS)**

Plaintiffs allege MBHS breached the standard of care during delivery of J.M.S. and discharge of Perkins and her newborn baby, by failing to protect Perkins and J.M.S., and by enabling custody transfer without lawful authority. Under Mississippi law, malpractice occurs when a provider deviates from the applicable standard of care. *McMichael v. Howell*, 919 So. 2d 18, 22 (Miss. 2005).

MBHS argues that it was not the treating hospital and that Perkins consented to discharge. Plaintiffs, however, allege duress and a lack of informed consent. These claims implicate hospital protocol and patient rights, which are fact-specific and may require expert testimony. See *Hubbard v. Wansley*, 954 So. 2d 951, 957 (Miss. 2007).

Although MBHS may later raise defenses under the MTCA or challenge causation, the Court finds Plaintiffs have stated a plausible claim sufficient to warrant discovery. The motion to dismiss is therefore denied, at this juncture.

**F. Motion to Substitute [Doc. 120]**

Plaintiffs request substitution of MBMC in place of MBHS, asserting MBMC is the correct operational entity. Substitution is favored where it secures the real party in interest and avoids needless dismissal. *In re Covington Grain Co.*, 638 F.2d 1362, 1364 (5th Cir. 1981); *Int'l*

*Ass'n of Machinists v. Tex. Employment Comm'n*, 163 F.3d 849, 854 (5th Cir. 1999). This Court finds substitution appropriate. The motion is GRANTED.

### V.    CONCLUSION

IT IS HEREBY ORDERED that:

**A. MDOC Motion [Doc. 105]**

The Motion to Dismiss filed by the Mississippi Department of Corrections and its officials is GRANTED IN PART and DENIED IN PART. Sovereign immunity bars monetary damages against MDOC, but claims for prospective injunctive relief survive. Individual capacity claims against Cain, Terrell, Collins, and Sanders also survive.

**B. MDCPS Motion [Docs. 107]**

The Motions filed by MDCPS and its officials are GRANTED IN PART and DENIED IN PART. Claims of damages against MDCPS are barred by the Eleventh Amendment, but claims for injunctive relief may proceed. Barrett and Miller are not entitled to qualified immunity at this stage.

**C. MBHS Motion [Doc. 109]**

The Motion to Dismiss filed by MBHS is DENIED. Plaintiffs have sufficiently alleged joint action with MDCPS and stated a possible viable state law claim for medical malpractice.

**D. Flowood and Bowers Motion [Docs. 102]**

The Motion to Dismiss and/or Summary Judgment, filed by the City of Flowood and Chris Bowers are DENIED. Plaintiffs plausibly allege municipal liability under *Monell*, and genuine disputes of fact preclude summary judgment.

**E. Plaintiffs' Motion to Substitute [Doc. 120]**

Plaintiffs' Motion to Substitute MBMC in place of MBHS is GRANTED. Substitution secures the real party in interest and promotes judicial efficiency.

This case shall proceed to discovery consistent with this Court's rulings. The parties shall submit a joint proposed scheduling order within fourteen (14) days of the entry of this Opinion and Order.

SO ORDERED and ADJUDICATED this the 30th day of September, 2025.

                                        **/s/HENRY T. WINGATE**
                                        **UNITED STATES DISTRICT COURT JUDGE**